I «CANNELLA, J.
Plaintiff, Larry Williams, appeals a judgment dismissing his personal injury suit against defendant, Richard Thiede, and his automobile insurer, PATCO Assurance Company and Louisiana Indemnity Company.[1] We affirm.
On April 11, 1996, plaintiff claims that he injured his knee, back and ankle when defendant backed his taxicab into a parked car, pinning him between the 2 vehicles. The event allegedly occurred in front of a convenience store in a Shell gasoline station in Harahan, Louisiana.
As a result, plaintiff filed suit against defendant and his insurer on January 6, 1997. A judge trial was held on September 10, 1998 and concluded on January 4, 1999. On January 5, 1999, the trial judge rendered a judgment against plaintiff, dismissing his suit. He stated that he did not find plaintiffs version credible, nor did he believe plaintiffs eyewitness.
|oOn appeal, plaintiff asserts that the trial judge erred in finding that plaintiff failed to prove by a preponderance of the evidence that defendant’s negligence solely caused the accident or that the accident caused plaintiffs injuries.
Defendant testified that he stopped to allow his passenger, an elderly lady, to go into the store at the Shell station to make a purchase. While waiting, he parked parallel to the curb in front of the store. When his passenger came out of the store, defendant began backing up to get closer to the passenger so that she did not have far to walk. Before moving, he looked out the side window to check for obstacles. He observed another vehicle parked at an angle facing the store. After backing approximately 20 feet, defendant stopped to let the lady enter the cab. Instead of entering from the driver’s side, the passenger walked around the back of the cab to enter on the passenger side. As she started to get in, defendant heard and felt someone banging on the trunk. This startled him and his foot left the brake pedal causing the cab to back up 2-8 feet. Defendant claims he struck the other car, causing a dent in its back right side door. He testified that he never saw plaintiff behind the cab at any time, even after the incident. Defendant then put the car in park and got out to ask if plaintiff was injured. Plaintiff was jumping around claiming that his leg was hurt.
Plaintiff is an area-wide tractor trailer driver. He was on his way home from work when he stopped at the Shell station convenience store. After making his purchase, plaintiff claims that he followed the taxicab passenger out of the store and walked behind her as she moved between the cab and the other car. Plaintiff testified that he saw defendant backing up as he walked between defendant’s cab and the other car. Because defendant kept backing, plaintiff started yelling and pounding on the taxi-cab trunk to get him to stop. He did not |4try to get out of the way. He explained that he could not extricate himself, yet he started pounding on the cab before he was pinned. Plaintiff testified that defendant kept backing despite the pounding and noise and that the *1034 cab pinned him between the vehicles. Plaintiff contends that he twisted his body violently trying to avoid being hit and that he injured his right knee, ankle and low back. He claims that his knee put the dent in the other car. He testified that he fell down when the cab pulled forward. Plaintiff claimed that his knee was bruised. When confronted with all of his medical treatment being to the left knee after the accident, he explained that the cab bumper hit both knees. Plaintiff further testified that no one was around at the time, except the passenger. He then changed this testimony, stating that Donald Bailey, the owner of the other car was behind him. Although Bailey was alleged to be an eyewitness, plaintiff did not inform the investigating officer.
Defendant’s company called the police, dispatched an ambulance and sent an investigator to the scene. However, plaintiff refused medical assistance. Later that evening, plaintiff went to the East Jefferson General Hospital emergency room complaining of knee, back and ankle pain. He was seen by a chiropractor, Dr. Richard Hages for several months, by a neurologist, Dr. Aaron Friedman, on one occasion, and by an orthopedic surgeon, Dr. Bernard Manale of the Louisiana Clinic, until the date of trial. Plaintiff was diagnosed with a back sprain, left knee and left ankle sprain. At time of trial, he was still having muscle spasms in his back.
All three of the doctors testified that plaintiff was asked if he had any prior injuries to the back, knee and ankle and that plaintiff specifically denied suffering any prior injuries to his back or left knee, although he told one doctor that he 1 ¡^fractured his ankle when he was 16 years old. However, plaintiff contended that the doctors did not ask him about prior injuries. Plaintiff also denied having any prior injuries in his deposition. Contrary to his assertions to the doctors and in his deposition, the evidence showed that plaintiff had work related injuries in 1991, 1992 and 1993 in which he claimed injuries to his low back, left knee and left ankle. His last back treatment was in 1993.
Following the alleged accident, plaintiff missed 2 days of work. The reasons for these absences are documented by his employer, Southeastern Motor Freight, Inc. However, at trial, plaintiff claimed that he missed approximately 100 days between the accident and trial. Upon further questioning, he changed that testimony to 44 to 60 days. Subsequently, plaintiffs employment records were produced showing various reasons for the absences, none of which were related to pain from his back, knee or ankle. Plaintiff explained that he gave other reasons for being absent because he was .afraid that his employer might think he could not perform his job as a truck driver and would terminate him. None of the doctors told plaintiff that he could not work.
Plaintiff also disputed the testimony and/or reports of the doctors on 2 other points. He testified that he was also being treated for his neck from the accident, contrary to the testimony of Dr. Hages that the cervical area was not treated. Dr. Manale stated in his report that plaintiff told him he was immediately taken to the hospital, but at trial stated he went later that evening. Plaintiff also denied telling Dr. Manale that he missed a month of work following the accident.
Officer Henry Bond investigated the accident. He noted that the corner of the cab’s rear bumper struck the rear door of the other car. He noted the position | fiof the vehicles in his report. He did not recall plaintiff stating that his knee dented the car and he did not list any eyewitnesses.
Donald Bailey, a truck driver for a soft drink company, testified that he stopped at the store on his way home. He testified that the defendant had been in the store and was walking out when he entered. He did not see the cab passenger. Bailey stated that when he left the store, plaintiff was walking in front of him. Bailey claimed that he saw the cab backing into plaintiff and that he yelled at the cabbie to stop and pounded on the trunk of the cab. *1035 When the cab moved forward, plaintiff collapsed to the ground. Bailey stated that plaintiffs knee caused the dent in Bailey’s car. He also said that he described what he saw to the police officer. He did not remember if he told this to the cab investigator, nor did he remember telling the investigator that he was in the store and did not see the accident.
Finally, the cab company investigator, Mark Adolph, testified that when he spoke to Bailey at the scene, Bailey told him that he was in the store when the collision occurred and did not see anything.
In order to determine whether liability exists under the facts of a particular case, the Court applies a duty-risk analysis. Under this analysis, plaintiff must prove:
(1) the conduct in question was the cause-in-fact of the resulting harm;
(2) defendant owed a duty of care to plaintiff;
(3) the requisite duty was breached by the defendant;
(4) the risk of harm was within the scope of protection afforded by the duty breached.
Stroik v. Ponseti 96-2897 (La.9/9/97), 699 So.2d 1072, 1077.
|7In reviewing the factual findings of the trial court, the Court of Appeal is limited to a review for manifest error. Unless clearly wrong, the Court cannot upset the factual findings of the trial judge or jury. Stroik v. Ponseti 699 So.2d at 1079; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where two reasonable views of the evidence exist, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stroik v. Ponseti, 699 So.2d at 1079; Stobart v. State, 617 So.2d 880, 882-83 (La.1993). However, the reviewing court has a constitutional duty to review facts. Stroik v. Ponseti 699 at 1079; Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221. Therefore, it is not the case that a trial court’s factual determinations “cannot ever, or hardly ever, be upset.” Stroik v. Ponseti, 699 So.2d at 1079; Ambrose v. New Orleans Police Department Ambulance Service, 639 So.2d at 221. In addition, “[t]he disbelief of witnesses is a valid ground for refusing to consider their testimony in formulating a conclusion on the facts, but it cannot be used as a means to supplant affirmative proof where none exists and thus afford the basis for a judgment.” Stroik v. Ponseti, 699 So.2d at 1080.
The trial judge found that plaintiff and his witness, Bailey, lacked credibility. He concluded first that plaintiff failed his burden of proving that defendant backed into him. We find no manifest error. Defendant’s testimony, along with the testimony of the investigating officer and the company investigator, casts doubt on whether the cab struck plaintiff or pinned him between the vehicles. The property damage to Bailey’s car matched the damage to defendant’s right rear corner, further adding support to defendant’s version of the events. This was observed by the officer at the scene, who also stated that had Uthere been an eyewitness, he would have listed that person on the police report. Bailey was not listed, nor was anyone else. Adolph further testified that Bailey told him he was in the store and did not see the accident.
The evidence also shows that plaintiffs testimony was impeached in several areas, in particular his loss of work time and his failure to report to the doctors or in his deposition that he suffered similar injuries on three prior occasions. In addition, Bailey and plaintiff contradicted each other about which one pounded his fist on the cab. Finally, plaintiff did not try to get out of the way when he saw the cab backing up, although he started pounding on the cab before he was allegedly pinned.
Since we find that the trial judge was not clearly wrong in finding that plaintiff failed to satisfy his burden of proof by a preponderance of the evidence that defendant struck or pinned plaintiff between the vehicles, we need not address the question *1036 of whether the accident caused his injuries, since no contact to cause such injuries was proven.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by plaintiff.
AFFIRMED.

. PATCO Assurance Company and Louisiana Indemnity Company are now known as Patterson Insurance Company.